NORTH CAROLINA ELECTRIC MEMBERSHIP CORPORATION, A NORTH CAROLINA CORPORATION, PETITIONER v. DUKE POWER COMPANY, A NORTH CAROLINA CORPORATION, RESPONDENT

No. 8810SC1340

(Filed 15 August 1989)

Appeal and Error § 6.2— order compelling arbitration interlocutory—no right of appeal

An order compelling arbitration was interlocutory and plaintiff had no right of appeal; moreover, no substantial right

of plaintiff was affected since the parties' agreement provided that disputes as to the applicability of arbitration provisions should "without limitation" be submitted for arbitration, and plaintiff's complaint sought monetary damages only, a remedy which would not be affected by delaying review until a final judgment.

APPEAL by plaintiff from *Herring, D. B., Jr., Judge.* Order entered 9 September 1988 in Superior Court, WAKE County. Heard in the Court of Appeals 8 June 1989.

This is a civil action in which plaintiff appeals from an order staying litigation and compelling plaintiff to arbitrate, pursuant to G.S. sec. 1-567.3(a), those issues determined by the arbitrator to be arbitrable.

*Moore & Van Allen, by Joseph W. Eason and Elizabeth M. Powell, for plaintiff-appellant.*

*Kennedy Covington Lobdell & Hickman, by Clarence M. Walker and Myles E. Standish, and Senior Vice President and General Counsel, Steve C. Griffith, Jr., and Deputy General Counsel, Ellen T. Ruff, and Associate General Counsel, Ronald L. Gibson, for defendant-appellee.*

JOHNSON, Judge.

Plaintiff instituted this action on 21 April 1988 by the filing of its complaint which alleged *inter alia* that defendant was in default under a contract known as the "interconnection agreement" which constitutes part of plaintiff's purchase from defendant of an interest in the Catawba nuclear generating station. Defendant responded on 15 June by serving a notice of intention to arbitrate issues raised in plaintiff's complaint. The notice also stated defendant's intent to arbitrate the issue of the applicability of arbitration to the issues raised by plaintiff. On 24 June, defendant filed motions to compel arbitration and to stay the court action. On 1 July, plaintiff filed a motion to stay the arbitration proceeding and a motion for a preliminary injunction and a temporary restraining order. Plaintiff was granted the temporary restraining order that day.

On 11 July, the trial court denied plaintiff's motion for preliminary injunction and ordered plaintiff to respond to defendant's

demand for arbitration. Plaintiff so responded. On 9 September, after considering arguments of counsel, briefs and affidavits, the trial court denied plaintiff's motion to stay arbitration and granted defendant's motion to stay the court action and compel arbitration. Plaintiff was ordered to arbitrate pursuant to G.S. sec. 1-567.3(a). The order also held that the arbitrator must decide the arbitrability of the issues raised by plaintiff's complaint.

Plaintiff filed an appeal on the 9 September order to this Court in apt time. On 12 September, plaintiff moved the trial court to stay its previous order of 9 September. This motion was denied on 22 September. On 21 October, plaintiff filed with this Court a petition for writ of certiorari to review the 9 September order and for writ of supersedeas to stay that order pending review. Both writs were denied.

Plaintiff North Carolina Electric Membership Corporation ("NCEMC") is a cooperative electric member corporation organized under North Carolina law. Defendant Duke Power Company ("Duke") is a public utility serving customers in both North and South Carolina.

NCEMC and Duke entered into three contracts in 1980 arising from Duke's sale of a 56.25% undivided interest in unit number one of the Catawba nuclear station near York, South Carolina to NCEMC. One of those contracts, the interconnection agreement (the "agreement") is the subject of this action.

Pursuant to the agreement, the energy produced by plaintiff's entitlement to power is known as "retained capacity and energy" when it is used by plaintiff. Plaintiff sells this retained capacity and energy to its member cooperatives. A portion of plaintiff's capacity and energy entitlement is sold to defendant and is designated under the agreement "purchased capacity and energy." One of the exhibits to the interconnection agreement sets forth the methodology for arriving at prices for purchased capacity and energy. All of the breaches of contract alleged by NCEMC relate to the pricing of purchased capacity.

The following provisions are relevant to the parties' dispute regarding the price of purchased capacity and the arbitrability of the discrepancies claimed by plaintiff. Section 17.3 of the agreement provides that "Duke shall compute the charge for Purchased Capacity actually due and payable to NCEMC for the preceding calendar year. . . . If NCEMC successfully challenges Duke's com-

putation pursuant to Article 24 and . . . a higher payment is determined, Duke shall make such payment to NCEMC."

Article 24 deals with challenges and dispute resolution. Section 24.1 states in part the following:

> (A) the classification, computation, and other actions and determinations called for by this Agreement are subject to challenge by any party not initially making such decision or taking such action. Except as provided in Section 24.1(B) hereof, any unresolved dispute arising out of or relating to the matters set forth in this Agreement shall be settled by arbitration in accordance with the procedures set forth in this Article, . . . *In addition, disputes relating to the arbitration provisions of this Agreement, including without limitation disputes as to the applicability of such provisions to a particular dispute, shall be submitted to arbitration.* (Emphasis added.)

> . . . .

> (B)(2) Any dispute arising out of or relating to Article 22 or 23 shall not be submitted to or determined by arbitration unless the affected parties agree to do so in writing.

The article 23 referred to above concerns defaults under the agreement.

On 7 August 1987, plaintiff wrote defendant a letter it termed a "notice of default" stating that defendant had incorrectly calculated the payments due plaintiff for purchased capacity for 1985 and 1986. In October of 1987, plaintiff again wrote defendant as to the amounts it considered to be due for 1985, 1986 and 1987. Plaintiff enclosed its recalculation of the purchased capacity charges, demanded payment of the difference, and informed Duke that plaintiff considered it to be in default.

NCEMC asserts in this civil action arising out of Duke's refusal to pay the purchased capacity charges as recalculated by NCEMC that the nonpayment constitutes an "Event of Default" which under section 23.1(A) of the parties' agreement is not subject to arbitration. Defendant, on the other hand, urges that plaintiff is actually challenging defendant's calculation of purchased capacity charges and that such a dispute is arbitrable under section 24.1(a) of their agreement.

**N.C. ELECTRIC MEMBERSHIP CORP. v. DUKE POWER CO.**

[95 N.C. App. 123 (1989)]

The initial question before us is whether plaintiff has the right to appeal an order compelling arbitration. We hold that the order is interlocutory and plaintiff has no right of appeal.

The 9 September 1988 order from which plaintiff seeks appeal compelled plaintiff to participate in arbitration proceedings pursuant to G.S. sec. 1-567.3(a). This precise question of the appealability of an order compelling arbitration has previously been decided by a different panel of this Court in *The Bluffs, Inc. v. Wysocki*, 68 N.C. App. 284, 314 S.E.2d 291 (1984). This Court in *The Bluffs* held that an order compelling arbitration was interlocutory and did not affect a substantial right. We find the reasoning in *The Bluffs* persuasive and its holding dispositive of the case before us. Further, we are bound by it as precedent. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989).

In *The Bluffs*, this Court analyzed relevant portions of the Uniform Arbitration Act as enacted by North Carolina in Article 45A. It noted that there are six situations under the Act in which an appeal may be taken:

(1) An order denying an application to compel arbitration made under G.S. 1-567.3;

(2) An order granting an application to stay arbitration made under G.S. 1-567.3(b);

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of this Article.

*The Bluffs*, 68 N.C. App. at 285, 314 S.E.2d at 292. The Court noted the conspicuous absence from the list of an appeal from an order compelling arbitration. Such an order, the Court held, is interlocutory and not immediately appealable. *Id.* at 285, 314 S.E.2d at 293.

There is no appeal from an interlocutory order unless it affects a substantial right. G.S. sec. 7A-27(d) and G.S. sec. 1-277(a). Plaintiff contends that, unlike the situation in *The Bluffs* in which the Court found that no substantial right was affected by the order compelling

arbitration, a substantial right is affected in the instant case. We disagree.

A substantial right is one which may be lost or irreparably affected if the order is not reviewed before final judgment. *Blackwelder v. State Department of Human Resources*, 60 N.C. App. 331, 299 S.E.2d 777 (1983). NCEMC's complaint seeks monetary damages only. If it should prevail on the merits of its claim, plaintiff would be awarded all damages proved plus interest. This right will not be affected by delaying review until a final judgment.

Plaintiff argues, however, that lack of review will mean impairment of its right to withhold from arbitration an issue it did not agree to arbitrate, namely any dispute regarding default under article 23. We disagree.

Section 24.1, quoted in relevant part above, states first that any dispute under the agreement is to be arbitrated unless it arises out of articles 22 or 23. The section goes on to say that "in addition," disputes as to the applicability of the arbitration provisions shall "without limitation" be submitted for arbitration. Here the parties dispute whether plaintiff's claim against defendant is properly classified as a default which would be nonarbitrable, or a challenge to Duke's computation of purchased energy charges which under section 24.1 would be subject to arbitration. In a situation such as this where there is a question as to the applicability of the arbitration provisions, the language of the agreement clearly provides that a dispute as to the applicability of the arbitration provisions shall itself be submitted to arbitration. Plaintiff may present its argument that its dispute is nonarbitrable at the arbitration proceeding.

We are also unconvinced by plaintiff's argument that lack of immediate appeal will impair its asserted right to a timely judicial determination of its rights under section 23.4 of the agreement which deals with disputes concerning default. This section provides that in the event that Duke disputes an asserted default, it shall perform the disputed obligation or pay the amount at issue, but may do so under protest. Plaintiff's asserted right to this payment assumes the very point in issue, that the dispute in question is a default. Under the parties' agreement, the arbitrability, and therefore the nature, of the dispute must itself be submitted to arbitration. Further, plaintiff's objective under section 23.4 is the receipt of funds which it would receive if successful on the merits.

Delay in the possible payment due to arbitration would not be impairment of a substantial right. *See Waters v. Qualified Personnel, Inc.,* 294 N.C. 200, 240 S.E.2d 338 (1978).

By its third Assignment of Error, plaintiff claims the court erred in granting defendant's motion to require that the arbitrator determine the scope of the arbitration. We disagree. In accord with our analysis above of section 24.1 that disputes as to the applicability of the arbitration provisions be submitted to arbitration, it is clear that under the parties' own agreement, only the arbitrator could properly determine the scope of arbitration.

We find plaintiff's last Assignment of Error to be meritless and we do not address it.

This appeal is

Dismissed.

Judges COZORT and GREENE concur.